## WHITE *v.* PULLEY.[1]

*(Circuit Court, N. D. Alabama.  March, 1886.)*

1. EXECUTORS AND ADMINISTRATORS—ACTION—PLEADING—ADMINISTRATOR SOLE DISTRIBUTEE.
    When a person brings a suit as administratrix, alleges that she has fully administered the estate, made her final settlement, and that she is the sole distributee thereof, she is really suing in her own right, and neither as administratrix, assignee, nor distributee.

2. SAME—CONVERSION.
    Although the action is named a "plea of trespass on the case," it is immaterial that the facts declared make out an illegal conversion. *Rees* v. *Coats*, 65 Ala. 256.

[1] Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

3. SAME—RIGHT TO SUE.

An administrator may sue in his own right for the conversion of goods belonging to the estate, although acquired after the death of the intestate.

4. MORTGAGE—FORECLOSURE SALE—RIGHTS OF PURCHASER—GROWING CROPS.

A mortgage of land does not affect the growing crops until entry under the mortgage, and then all crops not severed pass with the land.[1]

5. SAME—MORTGAGE OF CROPS.

A mortgage of the crops made by the mortgagor of the realty, in possession, is a sale of the crops, and in law operates such a severance that they do not pass at a subsequent sale under the mortgage of the realty.

At Law. On demurrer and merits.

The complaint in this case was as follows:

"Elizabeth E. White, the plaintiff, a citizen and a resident of the state of Illinois, by attorney, complains of the defendant, Robt. L. Pulley, a citizen of Alabama, residing in said Northern district, summoned," etc., "of a plea of trespass on the case:

"For that whereas, heretofore, to-wit, on and before the twenty-fourth day of May, A. D. 1879, plaintiff, by appointment in due form of law in the probate court of Madison county, in the state of Alabama, was elected and appointed to be the administratrix of the estate of Michael White, deceased, and at the time aforesaid plaintiff was acting as such administratrix in settling the estate of her said decedent; and plaintiff avers that as such administratrix she, except as herein otherwise appears, fully administered said estate, and, to-wit, on the eighteenth day of April, 1881, made her final settlement of said estate in the probate court of said Madison county; and the plaintiff was and is the sole distributee of her said decedent's estate, which estate was solvent on such settlement.

"And the plaintiff further avers that while she was acting as administratrix of said estate as aforesaid, and at the request of one Robert W. Coltart, she loaned to said Coltart, on. to-wit, on the twenty-fourth day of May, 1879, the sum of fifteen hundred dollars, for which, and as evidence thereof, the said Coltart made his bond or writing obligatory of date as last aforesaid, for said sum of fifteen hundred dollars; and to secure the payment of said sum of fifteen hundred dollars the said R. W. Coltart, on said twenty-fourth day of May aforesaid, made and executed his certain mortgage, whereby the said Coltart, among other things, did give, grant, bargain, sell, and convey to plaintiff his entire crop of corn and cotton to be grown by the said Coltart on his plantation situated in the Big Cane, in said county and state, upon the conditions in said mortgage set out; the said crop of corn and cotton then having been planted, and being then in process of cultivation, by said Coltart, on his said plantation.

"And plaintiff further avers that the crop so grown for said year 1879 amounted to twenty-seven bales of cotton, of great value, to-wit, of the value of fifteen hundred dollars; and the corn so grown on the said plantation for said year amounted to twelve hundred bushels, of the value, to-wit, of the value of six hundred dollars; and that all of said corn and cotton so grown as aforesaid was embraced in and covered by said mortgage.

"And plaintiff further avers that on, to-wit, on or about the eleventh day of October, A. D. 1879, the said Robert L. Pulley, the defendant, entered upon the plantation aforesaid on which said crop of corn and cotton then was, and took and carried away all and entire the said twenty-seven bales of cotton, and the said twelve hundred bushels of corn, and converted the same to his own use; and by such taking and carrying away and conversion as aforesaid by the said defendant, the security for the payment of the debt due

---

[1] See note at end of case.

from the said Coltart to plaintiff was taken away, destroyed, and rendered of no avail as a security to plaintiff for her said debt so due her from the said Coltart; and the said debt so due as aforesaid, together with the interest thereon, is yet due and unpaid, except that the same is entitled to a credit of five hundred and eighty-seven ($587) dollars paid thereon on the thirteenth day of December, 1879.

"And plaintiff further avers that the said Coltart departed this life on, to-wit, on the fifth day of September, 1879, leaving no property, estate, or effects liable to the payment of plaintiff's debts now due as aforesaid, nor out of which the same could be made; and plaintiff is the owner of said debt and mortgage aforesaid, and is entitled to the proceeds thereof.

"Whereby, and by reason of the premises, a right of action hath accrued to the plaintiff to have and recover of the defendant two thousand dollars ($2,000) as damages; hence this suit."

To this declaration the defendant demurred as follows:

"(1) That said declaration does not show in what manner the said plaintiff acquired her title to the said mortgage and debt; (2) that said plaintiff did not, at the time of the alleged taking of said crop of corn and cotton, have such title thereto, or interest therein, or in and to the indebtedness secured by said mortgage, as entitles her in law to maintain this action; (3) that said action is of tort, and cannot be maintained by the plaintiff, whose declaration shows that the right of action accrued to her as administratrix, and not in her individual character; (4) that said declaration shows that no damage in law has been done said plaintiff for which this action can be maintained; (5) that the property alleged in said declaration to have been taken and carried away by the defendant, and by him converted to his own use, is by said declaration alleged to have been the property of the plaintiff as administratrix of the estate of Michael White, deceased, and not the property of the plaintiff in her individual capacity; wherefore plaintiff, in her individual capacity, has no action against defendant for any trespass upon or wrong to said property of said administratrix of said Michael White, deceased; (6) that plaintiff, as sole distributee of the estate of Michael White, deceased, cannot maintain any action for the alleged wrong or trespass against the plaintiff as administratrix of the estate of said Michael White, deceased; (7) that said declaration contains no averment that any judgment or decree of a court of competent jurisdiction has been rendered vesting in the plaintiff, as sole distributee of said Michael White's estate, the right of action upon the tort alleged in said declaration; (8) that the plaintiff cannot sue in this court on the trespass or tort alleged in the declaration for the reason that it is not alleged in said declaration that at the time said tort or trespass is alleged to have been committed said administratrix, or said plaintiff, was a non-resident of the state of Alabama; (9) that the plaintiff, as sole distributee of the estate of Michael White, deceased, hath complained against said defendant as in a plea of trespass on the case for alleged wrongs, or trespasses, against the administratrix of said Michael White's estate, whereas, the declaration ought to have been in a plea of trover for the value of the property alleged to have been taken and converted by the defendant."

Without waiving the demurrer the parties waive trial by jury, and submit the case to the court on the demurrer and the merits; the defendants pleading the general issue, and setting up title under prior mortgages, in case the demurrer is overruled. The plaintiff proves the case substantially as made in the declaration. The defendant proves (1) a mortgage by plaintiff's grantor, Coltart, of land to a Mrs.

Hamilton, of date April 24, 1878; law-day January 1, 1879; (2) deed by Mrs. Hamilton to defendant, Pulley, under sale of the mortgaged land, October 11, 1879, deed dated October 15, 1879; (3) mortgage by Coltart and wife, September 18, 1876, to Pulley, defendant, of land to secure debt of $2,300, law-day September 18, 1877; (4) proof that land embraced in said deeds and mortgages is the same as that upon which the crops claimed by plaintiff were grown; that Pulley entered into possession of the land on which the crops were grown under his mortgage of September 18, 1876, immediately on the death of Coltart, about the middle of September, 1879, while the crops claimed by plaintiff were standing ungathered; that Pulley gathered the crops while holding the land under his own mortgage, and as purchaser under the sale under Mrs. Hamilton's mortgage; and at the time of entering had no knowledge of Mrs. White's claim, but learned of it soon after.

L. W. Day and *Humes, Gordon & Sheffey,* for plaintiff.

R. C. Brickell and *Cabaniss & Ward,* for defendant.

PARDEE, J.  The question raised by the demurrer as to the plaintiff's right to maintain this action has been one of difficulty, because the declaration contains the unnecessary statements that plaintiff, as administratrix of the estate of Michael White, has, except as otherwise appears, filed her final account of administration, and that plaintiff is the sole distributee of the said estate.  The learned counsel for defendant have plausibly assumed that plaintiff was suing in the capacity of distributee for an alleged conversion suffered in her capacity as administratrix, and have contended that the suit must fall because the right of action for a tort is not assignable, and because the distributees of an estate can only enforce their rights through an administration.

Upon the examination I have given the matter, I am inclined to the opinion that their contention is well founded, if the plaintiff is suing as assignee or distributee; but I have concluded that the plaintiff is suing in her own right, and neither as administratrix, assignee, nor distributee.  I am inclined to think that the unnecessary averments referred to were inserted by the counsel for plaintiff to support some theory of the case not yet developed.  That the action is named a "plea of trespass on the case," while the facts declared make out an illegal conversion, is immaterial, and the authorities cited as to the necessity of the right of possession in order to maintain an action of trespass are therefore irrelevant.

In the case of *Rees* v. *Coats,* 65 Ala. 256, it is decided that "a person who has a valid lien under a verbal mortgage, on a crop which was not planted when the mortgage was given, may maintain a special action on the case against another who, with notice of such lien, has converted the crop when gathered to his own use."  See, also, *Columbus Iron-works* v. *Renfro,* 71 Ala. 579.  These authorities are

sufficient to support the plaintiff's action, so far as the form or style of it is concerned.

As to the right of the plaintiff to sue in her own name for a tort against property of the estate, I find in Williams on Executors the following declared:

"Upon the death of the testator or intestate, if any injury is afterwards done to his goods and chattels, the executor or administrator may bring an action for damages for tort; and under such circumstances he has his option either to sue in his representative capacity, and declare as executor or administrator, or to bring the action in his own name, and in his individual character. So with respect to the action of trover, if the goods are taken and converted after his death, and before the executor has obtained possession of them, he may either bring an action in his own name without alleging himself executor, or he may sue as executor, and declare either that the testator was possessed of the goods, and the defendant, after his death, converted them, or he may allege that he himself was possessed as executor, and the defendant converted them." See Williams, Ex'rs, 784.

"Where the action accrues to the executor or administrator upon a contract made by or with him as such, after the death of the testator or intestate, or for an injury done to, or conversion of, the property of the testator or intestate, in the hands or possession of the executor or administrator, after the death of the intestate or testator, the action may and ought to be brought in the proper name of the executor or administrator, but not as such." Id. 785, note, and authorities there cited.

It follows that an administrator may sue in his own right for the conversion of goods belonging to the estate, although acquired after the death of the intestate. In the present case it may be noticed, too, as bearing on the right of plaintiff to sue individually, that the declaration does not show that the money loaned Coltart was the money of the estate, nor that the bond and mortgage given by Coltart were given to the plaintiff as administratrix. The demurrer should be overruled.

On the merits, the question is whether the mortgage given by Coltart to plaintiff operated a severance of the growing crops mortgaged from the realty. I think it clear that a mortgage of land does not affect the growing crops until entry under the mortgage, and then all crops not severed pass with the land. See 2 Jones, Mortg. § 1658, and cases cited; and *Coffey* v. *Hunt*, 75 Ala. 236. The crop in this case alleged to have been converted was not physically severed at the time defendant entered under his mortgage, nor entirely gathered when defendant purchased at the sale under Mrs. Hamilton's mortgage.

But the plaintiff contends that Coltart had the right to sell the growing crops at the time he gave plaintiff a mortgage on them, and that giving the mortgage operated a legal severance of the crops. The mortgagee may, if he sees fit, enter at any time after default; but if he chooses to leave the mortgagor in possession he consents that the profits may be received by the mortgagor, and held without account. See Hil. Mortg. 187. The rights of the mortgagor in the mortgaged

premises are well settled. He is regarded as the owner of the property as against all the world except the mortgagee. "He has the power of conveying or leasing the premises subject to the incumbrance, and is entitled to the rents and profits until they are intercepted by some active assertion of claim to them by the mortgagee." *Comer* v. *Sheehan,* 74 Ala. 452; *Falkner* v. *Campbell,* Id. 359; *Johnston* v. *Riddle,* 70 Ala. 219. Even though the mortgage may, in terms, give a lien upon the profits and income until possession of the mortgaged premises is taken, or something equivalent done, they belong to the mortgagor. See *Johnston* v. *Riddle, supra; Fosdick* v. *Schall,* 99 U. S. 253. "A mortgagor of real estate is not liable for rent while in possession. He contracts to pay interest, not rent." *Gilman* v. *Telegraph Co.,* 91 U. S. 616, 617. A mortgagor is entitled to sever, in law or in fact, the crops which stand upon his land at any time prior to the destruction of his title by sale or entry under the mortgage. This results from his ownership, and consequent right to the use and profit of this land." *Willis* v. *Moore,* 59 Tex. 628. See *Bittinger* v. *Baker,* 29 Pa. St. 70; *Buckout* v. *Swift,* 27 Cal. 433; Freem. Ex'ns, § 113. In *Myers* v. *White,* 1 Rawle, 353, it was decided that, even after the commencement of a suit on a mortgage, the mortgagor may dispose of his growing crop, and then it will not pass to the sheriff's vendee though it be still growing on the land, and this decision is indorsed as correct law in 90 Pa. St. 217. In *Willis* v. *Moore* the decision quoted is put upon the ground that a mortgage in Texas is a mere security for debt, and in *Bittinger* v. *Baker* the opinion of the court is based, in part, on the law of Pennsylvania as to mortgages being liens on land, and not titles to it. In this last case, however, the court, after a review of the Pennsylvania and common-law authorities, says:

"The principle of these cases is that where a person is in possession of land under a title that may be determined by an uncertain event not within his control, it is essential to the interests of agriculture that such a determination of his lease shall not prevent him from reaping what he has sown. Co. Litt. 55; 4 Kent, Comm. 73; 3 Watts, 405. It is a rule demanded by the common sense of the people, and depending on it; and if it does not extend to a case like the one we are considering, then we have revealed to us this strange anomaly of a rule of common law or general custom that is unknown to the people, and that operates as a snare to them when acting on the dictates of common sense."

The only Alabama case to which my attention has been called, and bearing on the point in hand, is to the effect that "a transfer of a rent note after the grant of the reversion is subject to the rule that the rent, as an incident, passes and inures to the owner of the reversion; but if the rent is assigned while the lessor is still the owner of the reversion, and the reversion is afterwards conveyed, the rent and the reversion are effectually severed." *Alabama Gold Life Ins. Co.* v. *Olivier,* 1 South. Law T. 159. In *Hershey* v. *Metzgar,* 90 Pa. St. 217, it was held that where, under a claim for exemption, an appraisement

of a growing crop had been made under a previous execution, it operated a severance in law, although under the execution on which the land was sold the debtor could have no exemption of growing crops.

The general rule as to the passing of growing crops with the land is as defendant claims; but under the authorities herein cited, and on principle, I think I should hold in this case that the mortgage of the crops made by Coltart, the mortgagor of the realty in possession, to the plaintiff, was a sale of the crops, and in law operated such a severance that they did not pass at the subsequent sale under the mortgage of the realty.

For the foregoing reasons, and the law and the evidence being in favor of the plaintiff and against the defendant, it is ordered, adjudged, and decreed that the plaintiff, Elizabeth White, do have and recover of the defendant, Robert L. Pulley, the sum of $913, with legal interest according to the law of Alabama thereon from December 13, 1879, and all costs of suit.

### NOTE.

Crops fully matured do not pass by a sheriff's deed upon foreclosure sale of the land. Everingham v. Braden, (Iowa,) 12 N. W. Rep. 142.

A mortgagor, and those claiming under him, having the right to the possession and use of the mortgaged property after foreclosure sale until his title is divested by due course of law, may cut and remove all crops growing upon the mortgaged premises. in the usual course of good farming, until the confirmation of the mortgage sale. Allen v. Elderkin, (Wis.) 22 N. W. Rep. 842.

After the foreclosure of a mortgage upon a tract of real estate, the mortgagor planted a crop of corn thereon, which was immature and growing when the land was sold pursuant to the decree of foreclosure. One day before the sale of the land the mortgagor sold the corn to another, who claimed the same as against the purchaser of the land. *Held*, that the lien of the mortgage and decree of foreclosure attached to the growing crop as well as to the land, and that the purchaser of the land under the decree would be entitled to the growing and unsevered crop in preference to the vendee of the mortgagor, unless there was a reservation of the crop, or unless the purchaser had waived his right to claim the same. Beckman v. Sikes, (Kan.) 10 Pac. Rep. 592.