## No. 9057.

### FIRST NATIONAL BANK OF MONTROSE v. FELTER.

CHATTEL MORTGAGE—*Unplanted Crop.* A chattel mortgage of a crop to be grown from seed not yet planted confers upon the mortgagee an equity, effective only by possession taken before the right of any innocent purchaser or incumbrancer has intervened. The record of such mortgage is not notice thereof.

*Error to Fremont District Court, Hon. James L. Cooper, Judge.*

*En banc.*

Mr. EDWARD M. SHERMAN, for plaintiff in error.

Mr. D. W. ROSS, for defendant in error.

Opinion by Mr. Justice Teller.

DEFENDANT in error leased a farm to one Allen, and took a promissory note for the rent, secured by a chattel mortgage on the crops grown or to be grown on the land. He received also from Allen an order on a beet sugar company for the proceeds of the sale of beets to the amount of the rent.

Subsequent to the making of said mortgage the plaintiff in error made a loan to Allen, and took as security therefor a chattel mortgage on some personal property, together with 20 acres of sugar beets and other crops, already planted.

When the beets had been marketed, defendant in error brought suit against the sugar company on the order given him by Allen, pleading also his chattel mortgage, and the company appeared, deposited with the clerk the amount due

for beets, and the plaintiff in error was substituted as defendant.

It answered, setting up its debt and a chattel mortgage to secure it, and alleged that the beet crop claimed to be covered by plaintiff's chattel mortgage was not in existence, and had not been planted when said mortgage was executed and recorded, and hence the crop grown was not subject to the lien of the alleged mortgage. It also alleged that it had no knowledge of plaintiff's mortgage. To this the plaintiff demurred, alleging that it was immaterial whether or not the crop had been planted before the giving of the mortgage.

The court sustained the demurrer, the defendant elected to stand on the answer, and has brought the cause here for review.

The only question to be considered is the effect of a mortgage on crops not yet planted, as against a mortgage given after the crop has been planted.

Upon the subject of mortgages on unplanted crops, there has been much discussion, mortgages on crops not yet planted being, in some cases, sustained on the ground that such crops have a potential existence. The weight of authority, however, attributes potential existence only to crops which will develop and come to maturity without the labor of the husbandman, such as hay, and the fruits of trees and vines—the class of products known as *fructus naturales;* while crops to be grown from seed yet to be planted, and which will have no existence but for labor yet to be applied —known as *fructus industriales*—are not the subject of mortgage.

The cases which sustain mortgages on crops to be planted are based on an opinion by Lord Hobart in *Grantham v. Hawley,* Hob. 132, in which it is said of the owner of land, that though he had not the crop "actually in view, nor certain, yet he had it potentially." This statement, as applied to unplanted crops, has been criticised in several cases, and we think with good ground.

To hold that a crop like wheat, corn or beets, whose production depends not only on the labor, but on the will of the mortgagor, has potential existence is to misuse that term. In the case of perennial crops or fruits, the harvest comes in the order of nature, depending neither on the will nor the labor of man. In those cases, there is that which by growth under natural laws comes to fruition. There is something in which the potentiality may properly be said to reside. In the other case, there is only a possibility, or perhaps the probability that something may be brought into being. So long as the planting of the crop is as uncertain as is any other act which is the subject of contract, there is nothing existing which can be said to contain potentialities. In *Cole v. Kerr,* 19 Neb. 553, 26 N. W. 598, the court declined to accept Lord Hobart's *dictum,* and said:

"Soil alone does not produce crops of corn in this degenerate age, if it ever did. It now requires, in addition to soil, seed and labor, both of man and beast."

In *Rochester Distilling Co. v. Rasey,* 142 N. Y. 570, 37 N. E. 632, 40 Am. St. 635, the validity of a mortgage on crops not planted was under consideration. The court said:

"There is no good reason for doubting that that which has a potential, or possible existence, like the spontaneous product of the earth, or the increase of that which is in existence, may properly be the subject of sale, or of mortgage. The right to it, when it comes into existence, is regarded as a present vested right. That which is, however, the annual product of labor and of the cultivation of the earth can not be said to have either an actual or a potential existence before a planting."

The court there further suggested that, the registry of a chattel mortgage being a substitute for an immediate delivery or change of possession, such provision excludes the idea of a chattel mortgage upon nonexistent things. The validity of such mortgages is denied also in *M. & M. S. Bank v. Lovejoy,* 84 Wis. 601, 55 N. W. 108, and in *Hutchinson v. Ford,* 9 Bush. 318, 15 Am. Rep. 711. Cases in Maine,

Georgia, Alabama, Texas, Illinois and Arkansas are to the same effect. In seven states of the Union there are statutes making express provision for the mortgaging of unplanted crops. In *Bernard v. Eaton,* 2 Cush. 303, the eminent Chief Justice Shaw said:

"A mortgage is an executed contract—a present transfer of title thereof, conditional and defeasible; it can, therefore, only bind property existing and capable of being identified *at the time it was made.*"

While the general rule in England and in most of the states of this country is that an instrument purporting to mortgage crops not planted is invalid at law until some new act has been performed by the mortgagor affirming it, or the mortgagee has taken possession when the crops have been grown, such instruments are held in equity to be enforcible when the crop has come into being.

In *Moody v. Wright,* 13 Metc. 17, 46 Am. Dec. 706, the court, considering an agreement that future acquired property should be held as security for a present engagement, declared that it was an executory agreement under which a creditor might take the property into his possession when it comes into existence, and hold it as security. The court said:

"If, however, before taking possession, or doing such acts as are necessary to give vitality to the mortgage or to subsequently acquired property, an attachment or assignment takes place, the opportunity for completing the lien is lost."

In *Congreve v. Evetts,* 10 Exch. 298, crops were assigned as security for rent, with power to take possession at any time. A creditor seized crops not sown when security was given. In an opinion by Baron Parke it is said:

"If the authority given by the debtor by the bill of sale had not been executed, it would have been of no avail against the execution; it gave no legal or even equitable title to any specific goods, but when executed to the extent of taking possession of the growing crops, it is the same, in

our judgment, as if the debtor himself had put the plaintiff in actual possession of those crops."

This same rule has been applied to so-called mortgages upon unplanted crops.

It is not contended here that defendant in error took possession under his mortgage. The case was not tried on that theory, nor is it discussed in the briefs.

This designation of the mortgage as a continuing executory contract has been accepted in many cases, and it is now well established that such an instrument is good in equity as against the mortgagor and all persons with notice, so that a mortgagee may take the crop when grown, provided no rights of innocent purchasers or incumbrancers have intervened. This makes it necessary to consider whether or not the filing of such an instrument is notice.

In Corpus Juris, Vol. 11, p. 435, in a discussion of such mortgages, it is said:

"Actual knowledge is required, however, and the constructive knowledge furnished by recording the mortgage is insufficient against a *bona fide* purchaser."

Cases from several states are cited to support the text. On the other hand, in a note on p. 400, 5 Am. & Eng. Ann. Cases, it is said that a filing of such instruments gives constructive notice. Examination of the cases cited to that point discloses the fact that several of them involve leases in which title to the crops were reserved by the landlord. These cases do not apply to the question in hand, since the courts generally make a distinction between the mortgages on unplanted crops, and a reservation of title thereto by a landlord in a lease. *Andrew v. Newcomb,* 32 N. Y. 417. Several others of the cited cases were decided on statutes giving the landlord a lien on the crops, and others on statutes which authorize mortgages on crops to be planted. In two of the cases cited on this point, there was actual notice, and in two others the mortgage was on growing crops, and hence not in point. Decisions in Iowa and Idaho support the text.

On principle it must be held that such an instrument, though filed, does not give notice.

In *Butt v. Ellett*, 19 *Wal.* 544, 22 L. Ed. 183, the court said:

"The mortgage clause in a contract of lease * * * could not operate as a mortgage because the crops to which it relates were not then in existence. When they grew, the lien attached and bound them effectually."

It must be held, therefore, that the filing of the plaintiff's mortgage on crops not planted gave no notice to the defendant, and its mortgage executed and filed after the crop was planted gave it a lien upon said crop. There is in this case no question between the defendant's mortgage, which is good in law, and the plaintiff's mortgage, which could be made effective only by taking possession of the crop after it is grown. No attempt was made to apply the equitable rule by such a taking of possession.

The want of notice, being alleged in the answer, is admitted by the demurrer, but, if upon a trial of the cause it should appear that the defendant had actual notice, a different question would be presented.

The judgment is reversed.

*Judgment reversed.*