No. 13,532.

TOLLAND COMPANY *v.* FIRST STATE BANK OF KEENESBURG.
(35 P. [2d] 867)

Decided July 23, 1934.

Mr. Oliver W. Toll, Mr. Charles E. Works, for plaintiff in error.

Mr. Herman E. Crist, Mr. Bernard J. Seeman, for defendant in error First State Bank.

*In Department.*

Mr. Justice Hilliard delivered the opinion of the court.

A controversy over certain funds in the registry of the court. Tolland Company, plaintiff in error, and the First State Bank of Keenesburg, one of the defendants in error, were rival claimants. The latter prevailed. The other defendants in error, John J. Zimbelman and Elisabeth Zimbelman, have no apparent interest in the review, and are not represented. Tolland Company assigns error.

It appears that January 3, 1928, the Zimbelmans gave a trust deed on certain lands to secure promissory notes, of which, in due course, the company became the holder; that the trust deed provided that "In case of any default whereby the right of foreclosure occurs hereunder, the * * * holder * * * shall at once become entitled to the possession, use and enjoyment of the property * * *, and to the rents, issues and profits thereof," and to the appointment of a receiver; that June 27, 1931, the Zimbelmans, still the owners and in possession of the land against which the trust deed was given, gave the bank a chattel mortgage on certain personal property, and on the beet crop then growing on the land, "all of said crops * * * now growing and when harvested and shall continue and attach to the proceeds thereof and which said proceeds are hereby expressly assigned and set over to the mortgagee to secure payment," etc.; that July 17, 1931, the Zimbelman notes being in default, the company instituted foreclosure of the trust deed, making the bank a defendant, and caused a receiver to be appointed; that

the bank filed a cross-complaint, claiming that by virtue of its chattel mortgage it was entitled to the beet crop growing on the land, on which issue was joined; that orderly the receiver sold the beet crop, and, awaiting judicial determination of the question between the company and the bank, deposited the proceeds in the registry; that October 10, 1931, proceeding under foreclosure of its lien, the bank sold the personal property covered by the chattel mortgage, and after deducting charges and expenses, credited the balance on the indebtedness owing it; that April 1, 1932, the company was awarded judgment against the Zimbelmans in its foreclosure suit; that June 11, 1932, sheriff's sale of the premises was made to the company, and it received a deed July 22, 1933; that as the result of the two foreclosures each claimant showed a deficiency claim against the debtors in excess of the sum arising from the sale of the beet crop. Summarized, the trust deed preceded, but foreclosure thereof, appointment of receiver, judgment, sale and deed, were subsequent to the execution and record of the chattel mortgage, and foreclosure of the chattel mortgage was prior to the decree, sale and conveyance under the trust deed.

It is clear that a current crop, such as beets, growing from the season's planting, may be mortgaged as a chattel. *Meador v. Cullison,* 52 Colo. 172, 120 Pac. 145; *First Nat. Bank v. Felter,* 65 Colo. 370, 176 Pac. 496. For its inferential bearing, see section 1, page 196, Session Laws 1923. We think the beet crop involved here was legally mortgageable, and that inherently no weakness attended the chattel mortgage which was the basis of the bank's claim. The company does not concede the fact, but proceeding on the theory of the general legality of the chattel mortgage, it contends that the quoted provision of the trust deed, executed and recorded in 1928, gives it priority over the chattel mortgage lien. We doubt the soundness of that view. A deed of trust given as security for a debt is in legal effect but a mortgage.

*McGovney v. Gwillim,* 16 Colo. App. 284, 65 Pac. 346. A mortgagee of land has a lien merely. *Pueblo & A. V. R. R. Co. v. Beshoar,* 8 Colo. 32, 5 Pac. 638; S. L. '27, p. 592, §12. A chattel mortgage, on the other hand, conveys title to the chattels, subject to redemption by the mortgagor. *Hurt v. Hubbard,* 41 Colo. 505, 92 Pac. 908. "A chattel mortgage of the crops, made by the owner in possession, operates in law as a severance of them, so that they will not pass under a mortgage of the land upon the subsequent entry of the mortgagee and sale of the realty under the mortgage." Jones on Chattel Mortgages (5th Ed.), p. 188, §130. See, also, 1 Thompson on Real Property, page 137. Months before sale under the company's trust deed, and nearly two years before deed issued, the beet crop of 1931 had matured. The rule that conveyance of land, voluntary or by judicial sale, carries crops, does not apply to crops that are ripe and ready for harvest. Ripened crops possess the character of personalty, hence do not pass to the purchaser of the land. *First Nat. Bank v. Beegle,* 52 Kan. 709, 35 Pac. 814. The mortgagor "is regarded as the owner of the property as against all the world except the mortgagee. 'He has the power of conveying or leasing the premises subject to the incumbrance, and is entitled to the rents and profits until they are intercepted by some active assertion of claim by the mortgagee.'" *White v. Pulley,* 27 Fed. 436. "Even though the mortgage may, in terms, give a lien upon the profits and income, until possession of the mortgaged premises is taken, or something equivalent done, they belong to the mortgagor." *White v. Pulley, supra.* "Crops, whether growing or standing in the field, ready to be harvested, are, when produced by annual cultivation, no part of the realty. They are, therefore, liable to voluntary transfer as chattels. It is equally well settled that they may be seized and sold under execution." Freeman on Executions, §113. "A mortgagor is entitled to sever in law or fact the crops which stand upon his land at any time prior to the destruction of his

title by sale under the mortgage; this results from his ownership and consequent right to the use and profits of the land, and the mortgage is taken with knowledge of that fact.'' *Willis v. Moore,* 59 Tex. 628, 638, 46 Am. Rep. 284. We think the provision of the trust deed was not of such dignity that the owners of the land, actively exercising possession and dominion, as here, would be precluded from giving a valid and enforceable chattel mortgage on their growing beet crop. At most, the trust deed provision constituted only a passive lien. It pointed the way to an active lien through receivership, but until that proceeding had been exercised the owners and possessors of the crop were competent to mortgage it in the manner here. ''A receiver holds the property coming into his hands by the same right and title as the person for whose property he is receiver, subject to liens, priorities, and equities existing at the time of his appointment.'' 23 R. C. L., p. 56, §60. See, also, *Lawson v. Warren,* 34 Okla 94, 124 Pac. 46. Reasonably construed, we think the provision of the trust deed to the effect that on default the debt holder shall be ''entitled'' to the rents, etc., pertains to what the creditor may accomplish through a proper proceeding, not to something enjoyable without or pending initiation of action. Therefore, since at the time it took the chattel mortgage on the crop no prior lien obtained, the bank's knowledge of the defaulted state of the real estate secured paper is not important. It was bound to notice liens, not debts. The intimation that the provision of the trust deed may be likened to a chattel mortgage on the crop, is answered in *First Nat. Bank v. Felter, supra,* where we held that a chattel mortgage, to be valid, must be of a crop then growing. The trust deed was given and recorded in 1928, and the crop in dispute is of the 1931 planting. The trial court rightly resolved that the chattel mortgage was to be preferred.

The company complains that the sale price of the chattels proper was much below their value, and that too great an allowance entered into the expense attend-

ing foreclosure of the chattel mortgage. Perhaps so. We are not privileged to know. The testimony taken on the points was at variance and the court determined adversely to plaintiff in error. The record does not warrant us in holding differently. The sale of the chattels, and of the real estate on foreclosure as well, occurred at an untoward economic time. As the result of the two foreclosures the Zimbelmans apparently yielded their all. The company has the land and the bank the proceeds of the chattels and beet crop. Both debts were legitimate, and neither was fully paid. We commend all concerned to the workings of a fairer day.

 The validity of the chattel mortgage is questioned because the officiating notary public was cashier and otherwise interested in the bank. When similarly presented the point was determined adversely to the company's contention. *Babbitt v. Bent County Bank,* 50 Colo. 258, 108 Pac. 1003.

Assuming that this is a case where the rule requiring marshalling of assets could be invoked, which appears to be doubtful, the answer to the assignment on the point is that to every intent and purpose the bank observed the doctrine. It had resort to the beet crop only after sale of its other security and application of proceeds showed necessity therefor.

 Error is assigned to the refusal of the court to permit the company to make a son of the Zimbelmans a party defendant that he might be subjected to cross-examination under the statute. It does not appear that the young man was interested in the issues between the major parties. We cannot think the court abused its discretion in the matter.

We have examined all other procedural questions presented by the record, and we believe the criticisms of the court's rulings to be without merit. Let the judgment be affirmed.

Mr. Chief Justice Adams and Mr. Justice Butler concur.