GALLERIA TOWERS, INC., a Colorado corporation, Plaintiff–Appellant,

v.

CRUMP WARREN & SOMMER, INC., a Colorado corporation and Fred S. James & Company of Colorado, Inc., a Colorado corporation, Defendants–Appellees,

and

Equitec 82 Real Estate Investors, a limited partnership, Third–Party Defendant–Appellee.

No. 90CA2044.

Colorado Court of Appeals, Div. A.

Nov. 7, 1991.

Rehearing Denied Dec. 12, 1991.

Certiorari Denied June 1, 1992.

Sherman & Howard, Mark L. Fulford, G. Melody Pickett, Denver, for plaintiff-appellant.

Holland & Hart, Scott S. Barker, Mary Metzger, Denver, for defendants-appellees.

Lichtenfels, Pansing & Miller, James E. Pansing, Denver, for third-party defendant-appellee.

Opinion by Judge ROTHENBERG.

Plaintiff, Galleria Towers, Inc., (Galleria) appeals the summary judgment entered in favor of defendants, Crump Warren & Sommer, Inc., (Crump Warren) and Fred S. James & Company of Colorado, Inc. (James Co.). We affirm.

In 1979, Century Properties Fund XII executed two promissory notes payable to its lender, Chase Manhattan Bank, N.A. As security for the notes, Century executed a deed of trust encumbering an office and retail complex (the property) in favor of Chase.

One provision of the deed of trust read: [Century] will not ... *except where the lessee is in default hereunder, terminate or consent to the cancellation or surrender of any lease* ... of the premises or of any part thereof, now existing or hereafter to be made, having an unexpired term of two (2) years or more ... [or] modify any ... lease so as to shorten the unexpired term thereof or so as to decrease the amount of the rents payable thereunder, or (iv) *accept prepayments of any installments of rents to become due under such leases, except prepayments in the nature of security for the performance of the lessees thereunder* .... (emphasis added)

The deed of trust, which was duly recorded, also contained a collateral assignment of Century's interest in all leases of the premises, "including, further, the right upon the happening of an event of default, to receive and collect the rents thereunder."

In 1983, Century sold the property to third-party defendant Equitec 82 Real Estate Investors (Equitec) by special warranty deed. Equitec did not assume the underlying obligations; rather, Century's deed conveyed the property to Equitec "subject to" then existing liens and encumbrances.

In 1986, Equitec entered into a five year lease with Crump Warren for 15,754 square feet of office space in the property. The lease contained a subordination provision stating that, "upon request of the landlord, tenant will in writing subordinate its rights hereunder to the lien of any first ... deed of trust...."

The lease also contained an attornment provision which is an agreement by a tenant to recognize a third party as a permissible successor party to a contract. Thus, unless the lease was modified or terminated, the tenant of the owner agreed to become the tenant of the foreclosing lender after completion of a foreclosure. *See Black's Law Dictionary* 119 (5th ed. 1979).

The attornment provision stated that:

*In the event any proceedings are brought for foreclosure,* or in the event of the exercise of the power of sale under any mortgage or deed of trust made by the landlord covering the premises, *the tenant shall attorn to the purchaser* upon any such foreclosure or sale and recognize such purchaser as the landlord under this lease. (emphasis added)

Thereafter, Crump Warren merged with James Co. Neither Crump Warren nor James Co. had actual notice of the deed of trust.

In March 1988, James Co. abandoned the property without Equitec's approval and stopped paying rent which constituted a default under James Co.'s lease with Equitec.

On May 6, 1988, Equitec and James Co. entered into a "surrender of premises" agreement under which James Co. paid Equitec $420,000 in consideration for Equitec's termination of James Co.'s obligations under the lease and a release of James Co.'s obligations under the lease.

Very shortly after Equitec's surrender of premises agreement with James Co., Equitec defaulted on the promissory notes and Chase foreclosed on the notes and deed of trust.

Thereafter, the property was sold at a sheriff's sale. Chase was the successful bidder and assigned its certificate of purchase to Galleria, a wholly owned subsidiary of Chase. Subsequently, a sheriff's deed was issued to Galleria.

Galleria then filed this action against James Co. alleging two claims for relief: (1) past rent due; and (2) tortious interference with contract. Galleria claimed that the original deed of trust contained restrictions against early termination of James Co.'s lease and further contained a restriction against acceptance of James Co.'s prepaid rent.

As the beneficiary of the assignment of rents, Galleria contends that James Co.'s advance payment of rents to Equitec and the surrender agreement improperly destroyed Galleria's collateral; thus, the agreement is invalid against Galleria. In a nutshell, Galleria contends that James Co. remains liable to Galleria for the rent.

In its second claim for relief, Galleria claims that James Co. "intentionally and improperly interfered with the performance of the obligations of the deed of trust by inducing or causing Equitec to violate its obligations under the deed of trust." Galleria could not sue Equitec because Equitec did not assume the deed of trust. Further, since Galleria's predecessor in interest, Chase, had agreed to a non-recourse loan, Galleria was also precluded from pursuing a deficiency claim against Equitec.

Nevertheless, James Co. filed a third-party complaint against Equitec for breach of contract, breach of implied covenant of

good faith and fair dealing, unjust enrichment, and rescission.

Galleria then moved for summary judgment and James Co. and Equitec filed cross-motions for summary judgment. James Co.'s and Equitec's positions are essentially the same. Basically, they contend that the assignment of rents vested no rights in Chase or Galleria, but merely gave Chase as lender the right to obtain a lien on future rents by filing a foreclosure action or by the appointment of a receiver.

According to Equitec and James Co., Equitec as owner of the property had the right to contract freely with its tenant, James Co., regarding James Co.'s lease, especially since James Co. was in default. Equitec and James Co. further contend that because Chase's initial loan was made "without recourse," its sole remedy in the event of a breach of the deed of trust was to foreclose.

The trial court granted James Co.'s motion for summary judgment and denied Galleria's motion, concluding that Chase's rights under the deed of trust were inchoate and did not vest until Chase foreclosed and a receiver was appointed. The court found that James Co. was released from the lease agreement on May 6, 1988, by Equitec and that Chase's rights did not vest until commencement of the foreclosure approximately three weeks later.

The court concluded that James Co. was not liable to Galleria for past rents due and also granted James Co.'s motion for summary judgment on the claim for tortious interference with contract. Also, the trial court's judgment for James Co. necessarily concluded James Co.'s third party claims against Equitec since Equitec's liability was based upon James Co.'s liability.

## I.

Galleria first contends that the trial court erred by finding James Co. not liable for rents due. We disagree.

At common law, a mortgagee had the right to possession of the mortgaged land and to the rents and profits, without any specific provision in the mortgage. *See*

*Moncrieff v. Hare*, 38 Colo. 221, 87 P. 1082 (1906). This was changed by statute in the early part of this century and is currently codified at § 38–35–117, C.R.S. (1982 Repl. Vol. 16A). That section provides:

> Mortgages, *trust deeds*, or other instruments intended to secure the payment of an obligation affecting title to or an interest in real property *shall not be deemed a conveyance, regardless of its terms*, so as to enable the owner of the obligation secured to recover possession of real property without foreclosure and sale, *but the same shall be deemed a lien.* (emphasis added)

■ Thus, mortgages, trust deeds, and assignments of rents do not convey title to real property, but merely create liens against the property. Until a mortgagor defaults and a lender takes some "effectual step" subjecting the assigned rents toward the payment of the debt, for example, by gaining rightful possession of the property or by filing a foreclosure action, the lender has only an inchoate right to the rents. This is so even if the terms in a deed of trust grant the lender the right to receive rents in the event of a default. *See Martinez v. Continental Enterprises*, 730 P.2d 308 (Colo.1986). *See also Megginson v. Hall*, 111 Colo. 104, 137 P.2d 411 (1943) (although rents are pledged as security, until the mortgagee takes some effectual step to subject them to the payment of rent, mortgagee has only an inchoate or passive lien on such rentals).

■ An inchoate interest is an interest in real estate which is not a present interest, but which may ripen into a vested estate, if it is not barred, extinguished, or divested. *Black's Law Dictionary* 762 (6th ed. 1990).

■ Here, the court found that Equitec released James Co. from all liability under the lease while Chase's rights to receive the rent were still inchoate. And, since Chase did not initiate the foreclosure prior to James Co.'s release, Chase's rights to receive the rents never vested. We agree with the trial court. *See Martinez v. Continental Enterprises, supra. See also Tolland Co. v. First State Bank*, 95 Colo.

321, 35 P.2d 867 (1934) (assignment of rents does not create a lien on crops).

We also reject Galleria's contention that Colorado's public policy favors its position and that the trial court's ruling "eviscerates all of the protections essential to give value to a security interest in real estate." We find no violation of public policy in the trial court's ruling.

It is undisputed that Chase is a major institutional lender. In 1979, it chose to make a non-recourse loan to Century, and, by doing so, it knowingly and voluntarily limited its remedies against its borrower to foreclosure. Four years later, when Equitec purchased the building from Century, Equitec purchased the property "subject to" liens and encumbrances in the deed of trust and did not assume the underlying obligations.

As drafter of the deed of trust, Chase could have required its original borrower, Century, and any subsequent purchasers like Equitec to assume the obligations in the deed of trust which would have made Equitec personally liable for the debt and for breaches of the covenants in the deed. However, Chase chose not to do so or to take other commercially reasonable measures to protect its inchoate interest in the rents.

Under these circumstances, we are not persuaded that the trial court's ruling violated any public policy considerations in this state. *See Martinez v. Continental Enterprises, supra* (before foreclosure, the public policy of this state favors the possessory rights of the mortgagor).

Contrary to Galleria's contention, we conclude that the trial court correctly granted defendant's motion for summary judgment for past rents due.

## II.

Galleria next contends that the trial court erred in granting James Co.'s motion for summary judgment on Galleria's tortious interference with contract claim. Again, we disagree.

■ In order to establish the tort of intentional interference with contract, a plaintiff must show: (1) the existence of a contract between the plaintiff and a third-party; (2) knowledge by the defendant of the contract or knowledge of facts which would lead the defendant to inquire as to the existence of the contract; (3) intent by the defendant to induce a breach of contract with the third-party; (4) action by the defendant which induces the breach of contract; and (5) damages to the plaintiff. *Carman v. Heber,* 43 Colo.App. 5, 601 P.2d 646 (1979).

■ Here, it is undisputed that tenant James Co. had no actual knowledge of the deed of trust or its provisions. Restatement (Second) of Torts § 766 comment i (1979) states that, in order for acts to be intentional and willful, the actor must have knowledge of the contract and must know that he or she is interfering with its performance. However, in *Bithell v. Western Care Corp.,* 762 P.2d 708, 711 (Colo.App. 1988), we held that actual knowledge is not required to prove intentional interference with contract. Rather, a plaintiff must show that the defendant "had knowledge of facts which would lead him to inquire as to the existence of the contract."

In support of its position, James Co. submitted the affidavit of its president and profit center manager. The affiant stated that he had no knowledge of the deed of trust before he executed the surrender of the premises agreement. He also stated that he made diligent inquiries of the James Co.'s employees who negotiated the agreement and learned that no one at James Co. had knowledge of the deed of trust.

In response, Galleria presented no affidavits and it points to no evidence in the record suggesting that James Co. had knowledge of facts which would lead it to inquire as to the existence of the deed of trust. Thus, the requirement of knowledge was not met. *Bithell v. Western Care Corp. supra.*

■ Galleria further contends that since the deed of trust was recorded pursuant to the Colorado Recording Act, § 38–35–109, C.R.S. (1982 Repl.Vol. 16A), James Co. had constructive notice which was sufficient as

a matter of law to meet the knowledge requirement. Even if we assume that James Co. did have constructive notice of the restrictions in the deed of trust because it was recorded, we have previously found that at the time James Co. made its $420,000 payment to Equitec under the "surrender of premises" agreement, no default had occurred between Equitec and Chase.

Accordingly, since lender Chase had no entitlement to the payment of rent under its contract (here, the deed of trust), *Martinez v. Continental Enterprises, supra,* there could be no tortious interference with contract at that time. As Chase's successor in interest, Galleria's action for tortious interference is similarly defective.

Galleria's reliance upon *McKee v. Howe,* 17 Colo. 538, 31 P. 115 (1892) and *Bonfils v. McDonald,* 84 Colo. 325, 270 P. 650 (1928) is misplaced. Both cases stand for the principle that leases are regarded as real estate rather than personal property, but they do not address the dispositive issues here.

In sum, we find no error in the trial court's summary judgment in favor of James Co. on Galleria's claim for tortious interference with contract.

### III.

Summary judgment is proper when the pleadings, affidavits, depositions, or admissions establish that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *See Pueblo West Metropolitan District v. Southeastern Colorado Water Conservancy District,* 689 P.2d 594 (Colo.1984). Applying that standard to the circumstances before us, we conclude that the trial court properly entered summary judgment for James Co. as to both claims for relief. Accordingly, James Co.'s third-party action against Equitec is moot.

The judgment is affirmed.

STERNBERG, C.J., and TURSI, J., concur.