**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 6 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

CHARLES CORRY,

     Plaintiff-Appellee,

v.

ANALYSTS INTERNATIONAL
CORPORATION, a Minnesota
corporation,

     Defendant-Appellant.

_____

CHARLES CORRY,

     Plaintiff-Appellant,

v.

ANALYSTS INTERNATIONAL
CORPORATION, a Minnesota
corporation,

     Defendant-Appellee.

No. 99-1158

(D.C. No. 97-Z-17)
(D. Colo.)

No. 99-1189

(D.C. No. 97-Z-17)
(D. Colo.)

**ORDER AND JUDGMENT** *

Before **BALDOCK, KELLY,** and **BRISCOE** , Circuit Judges.

    Defendant Analysts International Corporation (AIC) appeals the jury

---

    * This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

verdict in favor of Charles Corry on his intentional interference with contract claim. Corry cross-appeals the jury verdict rejecting his religious discrimination and retaliation claims brought under Title VII §§ 703 and 704, 42 U.S.C. §§ 2000e-2 and 2000e-3. We exercise jurisdiction pursuant to 28 U.S.C. § 1291, reverse and remand the district court's denial of AIC's Rule 50 motion for judgment as a matter of law on Corry's intentional interference with contract claim, and affirm the jury verdict on the religious discrimination and retaliation claims.

I.

AiC TechWest, a division of AIC, contracts with companies to provide temporary computer consultants. U.S. West Marketing Resources Group, now U.S. West Dex, (U.S. West) contracted with AIC for leased workers. The contract gave U.S. West "the right to request [AIC] to remove any Worker from an assignment or to refuse assignment of a Worker for any or no reason." Aplt. App. at 118. The contract also stated that "[l]oud talk, profanity or other activities which prove distracting shall not be tolerated." Id. Quest Database Consulting (Quest), a subcontractor of AIC, provides temporary computer consultants to AIC clients. The AIC-Quest contract provided that "[AIC] may at any time subsequent to [Quest's] acceptance, request [Quest] to remove any Worker . . . for its convenience, upon notice to [Quest]." Id. at 164. Quest and

2

Corry entered into an employment agreement for Corry to be assigned to U.S. West from August 14, 1995, through February 14, 1996, "unless terminated prior to this date, by [U.S. West]." Id. at 93. Corry understood that U.S. West could terminate his assignment at U.S. West.

Several of Corry's U.S. West coworkers testified at trial that Corry frequently used swear words at work, including "Jesus Christ," "God," "shit," "damn," "the F word, "GD," "bastard," "SOB," "goddamn," and "hell." Testimony regarding the frequency of Corry's use of the swear words varied from occasionally to constantly. In September 1995, Lynda Fowler complained to Sean Golden, her supervisor at U.S. West, about Corry's language. Golden contacted Ellen Ritt, the AIC technical staff manager, and also spoke to Kenneth Kemple at U.S. West about the complaint. On September 22, 1995, Ritt received a message from Kemple requesting a replacement for Corry because of his language. On October 2, 1995, Ritt arranged a conference call with Kemple, Golden, and Tom Hickey, a manager at Quest, to discuss the matter. Ritt asked Hickey to meet with Corry.

On October 3, 1995, Hickey met with Corry and told him there had been a complaint about his language. Hickey testified that he told Corry he was being placed on a two-week probation to correct his language. After the meeting, Corry approached Ritt and asked who had complained. Corry claims Ritt told

3

him a woman who "was very religious" was offended by his use of "God" and "Jesus Christ." Supp. App. I at 176.

On October 5, Ritt called a meeting of all the leased workers involved in Corry's project. Ritt handed out copies of the U.S. West policies and told the workers to behave in a professional, courteous manner at work. Corry testified that Ritt told them to refrain from saying "God" and "Jesus Christ." When Corry told Ritt he was not a Christian, he claims she told him he would abide by the Ten Commandments. Bradley Reeger testified that Ritt told them to follow the Ten Commandments or lose their jobs, but Ritt testified that Reeger was not at the meeting. William Gatz testified that Ritt said some language could be "viewed as a sin." Supp. App. I at 87. Ritt testified she mentioned the Ten Commandments as an example of why someone would be offended by the word "Goddamn," but she did not tell anyone to follow the Ten Commandments. According to Gatz and Michael Fanelli, Ritt brought up the Ten Commandments as an example of why one might find use of the words "Goddamn" and "Jesus Christ" offensive. Gatz, Fanelli, and Steve Justus testified that Ritt did not say they must follow the Ten Commandments. Gregory Pearman and Kenneth McFadden testified they did not hear any reference to the Ten Commandments during the meeting.

On October 6, 1995, Corry made a verbal complaint to U.S. West about

4

Ritt's statements. Corry filed a written complaint with Quest on October 8 and with U.S. West on October 9. Golden told Corry to take his complaints to Ritt.

According to Fowler, Corry's language did not change after the October 5 meeting and McFadden testified that Corry's language became worse after the meeting. Golden testified that he wanted Corry removed from the U.S. West project because he refused to change his language. Charles Swift, project manager at U.S. West (a temporary replacement for Kemple), decided to cancel Corry's contract. Swift called Ritt and asked that Corry be replaced. Ritt then called Hickey at Quest and told him that U.S. West had requested that Corry's assignment be terminated. Corry's assignment to U.S. West was terminated on October 13, 1995.

In his second amended complaint against AIC, Quest, and U.S. West, filed November 12, 1997, Corry presented three claims for relief: (1) discrimination and retaliation based on Corry's religion and opposition to unlawful employment practices, in violation of Title VII §§ 703 and 704, 42 U.S.C. §§ 2000e-2 and 2000e-3; (2) tortious interference by AIC with the contractual relationship between Corry and Quest; and (3) breach of contract by Quest. Corry settled his claims with Quest and the district court dismissed the claims against U.S. West. A jury found that Corry failed to prove his claims of religious discrimination and retaliation, but awarded Corry actual damages of $34,160 on his intentional

5

interference with contract claim against AIC.

II.

**Intentional interference with employment contract**

AIC contends there was insufficient evidence for the jury to find AIC intentionally interfered with Corry's employment contract with Quest. The district court denied AIC's Federal Rule of Civil Procedure 50 motions for judgment as a matter of law, asserted prior to submission of the case to the jury and again after the verdict. We review de novo the district court's decision on a motion for judgment as a matter of law, applying the same standard as the district court. Baty v. Willamette Indus., Inc., 172 F.3d 1232, 1241 (10th Cir. 1999). "Such a judgment 'is warranted only if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion.'" Id. (quoting Mason v. Oklahoma Turnpike Auth., 115 F.3d 1442, 1450 (10th Cir. 1997)). We "'do not weigh the evidence, pass on the credibility of the witnesses, or substitute our conclusions for [those] of the jury." Id. (quoting Harold Stores, Inc. v. Dillard Dep't Stores, 82 F.3d 1533, 1546-47 (10th Cir. 1996)). We "must enter judgment as a matter of law in favor of the moving party if 'there is no legally sufficient evidentiary basis . . . with respect to a claim or defense . . . under the controlling law,'" viewing "the evidence and any inferences to be drawn therefrom most favorably to the non-moving party." Id.

6

(internal quotations omitted).

Colorado state law recognizes an action for intentional interference with contract. Amoco Oil Co. v. Ervin, 908 P.2d 493, 500 (Colo. 1995). To prove the tort of intentional interference with contract, Corry must show: "(1) the existence of a contract between [Corry] and [Quest]; (2) knowledge by [AIC] of the contract or knowledge of facts which would lead [AIC] to inquire as to the existence of the contract; (3) intent by [AIC] to induce a breach of contract with [Quest]; (4) action by [Quest] which induces the breach of contract; and (5) damages to [Corry]." Galleria Towers, Inc. v. Crump Warren & Sommer, Inc., 831 P.2d 908, 912 (Colo. App. 1991). At issue here is whether AIC intended to induce Quest to breach the contract and whether AIC's actions induced an actual breach of that contract.

Viewing the evidence in the light most favorable to Corry, we conclude the trial testimony failed to establish that AIC intentionally interfered with Corry's contract with Quest. The evidence showed that U.S. West requested that Corry be removed from his assignment because of his language and Ritt relayed that information to Quest. There was no evidence that Ritt or anyone at AIC made the decision to remove Corry or influenced U.S. West's decision to do so. Corry did not establish that AIC initiated or made the decision to remove him from the U.S. West assignment or that AIC induced either Quest or U.S. West to remove

7

Corry from the U.S. West assignment.

AIC also argues there was insufficient evidence for the jury to conclude that it caused Quest to breach the contract, or even that the contract was breached. AIC asserts that Quest did not breach Corry's employment contract because the contract was for at-will employment and could be terminated at any time. Corry's contract with Quest provided that it could be ended before its stated termination date and Corry acknowledged that U.S. West could remove him at any time. To prove intentional interference with an at-will contract, Corry must show that AIC used "wrongful means, such as physical violence, fraud, civil suit, or criminal prosecution." Electrolux Corp. v. Lawson, 654 P.2d 340, 341-42 (Colo. App. 1982) (citing Restatement (Second) of Torts § 768 (1965)). Corry presented no such evidence. Viewing the evidence in the light most favorable to Corry, we conclude that he failed to prove his claim of intentional interference with contract. The district court erred in denying AIC's Rule 50 motion for judgment as a matter of law. [1]

---

[1] Because there was insufficient evidence to support the jury verdict on Corry's intentional interference with contract claim, AIC's contention that the district court erred in refusing to instruct the jury on the effects of the employment contracts is moot.

8

**Discriminatory or retaliatory interference**

On cross-appeal, Corry argues that the district court erred in refusing to instruct the jury that AIC could be liable for religious discrimination and retaliation under Title VII even if it was not Corry's employer. We review the district court's decision on whether to give a particular jury instruction for an abuse of discretion.   Davoll v. Webb , 194 F.3d 1116, 1131 (10th Cir. 1999). We review de novo "whether, as a whole, the instructions correctly stated the governing law and provided the jury with an ample understanding of the issues and applicable standards."   Id.  Instructional error requires reversal only if we determine the error was prejudicial, based on a review of the entire record.   Id.

The district court refused to give Corry's proposed instruction, which provided:

> If you determine that defendant was not an employment agency, you
> should next consider whether defendant, although not the direct
> employer of plaintiff, was an "employer" under Title VII who
> controlled access to plaintiff's employment opportunities. A
> company is an "employer" if it has 15 or more employees and does
> business in interstate commerce.

Aple. Supp. App. at 71. We conclude the district court did not err in instructing the jury. [2] The district court instructed the jury that to prove religious

---

[2] On appeal, Corry argues the district court should have instructed the jury that "[AIC], even if not Corry's employer, could be held liable under Title VII for unlawfully interfering with Corry's employment relationship with Quest."

(continued...)

9

discrimination and retaliation Corry must show that AIC was his employer. The district court further instructed the jury that "[i]n order to determine whether [AIC] was [Corry's] employer, the main focus of your inquiry should be [AIC's] right to control the means and manner of [Corry's] work conduct. You should consider the totality of circumstances surrounding the working relationship between the parties." Supp. App. III at 876. The district court properly instructed the jury that AIC was Corry's employer if it controlled the means and manner of Corry's employment. See Atchley v. Nordam Group, Inc., 180 F.3d 1143, 1153 (10th Cir. 1999) (holding that the main focus in determining whether an entity is the employee's employer under Title VII is the entity's right to control the means and manner of employee's performance). Further, a review of the record shows there was no evidence that AIC intentionally interfered with Corry's contract with Quest, much less that it discriminated or retaliated in doing

---

[2](...continued)
Cross-Aplt. Br. at 26. AIC contends Corry did not raise this issue with the district court. The instruction requested at trial includes the argument that AIC could be liable for Title VII violations even if it was not Corry's direct employer, if it controlled access to Corry's employment opportunities. The instruction requested at trial does not include the issue Corry raises on appeal -- that Title VII prohibits an entity that meets Title VII's definition of employer from engaging in discriminatory or retaliatory interference with any individual's employment opportunities with a third party, regardless of whether it was an employer of the plaintiff. Therefore, we will not consider this argument on appeal. See Tele-Communications, Inc. v. Commissioner, 104 F.3d 1229, 1232 (10th Cir. 1997) (noting that "[g]enerally, an appellate court will not consider an issue raised for the first time on appeal").

10

so.  Corry's proposed jury instruction would not require a different conclusion.

## III.

As regards AIC's appeal, the district court's denial of AIC's Rule 50 motion is REVERSED and this case is REMANDED for entry of judgment as a matter of law for AIC on Corry's intentional interference with contract claim.  As regards Corry's cross-appeal, the jury verdict against Corry on his religious discrimination and retaliation claims is AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge
