No. 14,571.

ERWIN *v.* WEST.
(99 P. [2d] 201)

Decided September 11, 1939.   Rehearing denied October 30, 1939.

Mr. A. D. Quaintance, Mr. E. B. Evans, for plaintiff in error.

Mr. Wm. Hedges Robinson, Jr., Mr. Sidney E. Shuteran, for defendant in error.

*En Banc.*

Mr. Justice Otto Bock delivered the opinion of the court.

This is a controversy between mortgagor and mortgagee over a certain fund in the depository of the district court of Jefferson county.

On October 13, 1926, the then owner of the real estate involved executed a promissory note in the sum of $5,000, payable to defendant in error, to whom reference is hereinafter made as plaintiff, and secured the same by the execution of a deed of trust, which note and deed of trust were thereafter extended to October 13, 1938, by the present owner—herein designated as defendant—by an instrument in writing dated January 7, 1936.

November 19, 1937, defendant leased said real estate to John Hamilton for one year, the term to commence December 1, 1937, at a rental of $583.20. The same date the latter executed and delivered his promissory note in the sum of $583.20 to the defendant, which was secured by a chattel mortgage on all crops raised on said real estate during the term of the lease and also on one black mule. The note was made payable November 15, 1938. The taxes for 1937 and the water assessments for 1938 were not paid by defendant.

September 19, 1938, plaintiff filed his complaint in foreclosure in the district court of Jefferson county, in

which, after setting out his cause of action, he asked, among other things, that during the pendency of the proceeding, and the time allowed for redemption, a receiver be appointed to take charge of the property and income therefrom, together with the rents, issues and profits thereof. Plaintiff served notice on defendant that he would apply for the appointment of a receiver on September 24, 1938, and on that date defendant filed objections to such an appointment, alleging that the principal of said note was not due and payable until October 13, 1938; that the reasonable value of the property was in excess of $7,500; that the premises were in a reasonable state of repair; that they had been farmed in a prudent and workmanlike manner; that defendant was not insolvent, and that the security for said note was adequate.

February 6, 1939, certain checks having been deposited in court to abide the result of the action, this matter came on for hearing upon stipulation of the parties, after which the trial court entered judgment in favor of plaintiff, applying the fund to the payment of the mortgage and note held by plaintiff, reversal of which is sought here.

The issue was tried on stipulated facts, the applicable parts of which, pertinent to the controversy here, are, "that said trust deed, among other things, provides as follows:

" 'And in case of any default, whereby the right of foreclosure occurs hereunder, the said party of the second part or the holder of said note or certificate of purchase shall at once become entitled to the possession, use and enjoyment of the property aforesaid, and to the rents, issues and profits thereof, from the accruing of such right and during the pendency of foreclosure proceedings and the period of redemption, if any there be; and such possession shall at once be delivered to the said party of the second part or the holder of said note or certificate of purchase on request, and on refusal, the

delivery of such possession may be enforced by the said party of the second part or the holder of said note or certificate of purchase by an appropriate civil suit or proceeding, and the said party of the second part, or the holder of said note or certificate of purchase, or any thereof, shall be entitled to a Receiver for said property, and of the rents, issues and profits thereof, after any such default, including the time covered by foreclosure proceedings and the period of redemption, if any there be, and shall be entitled thereto as a matter of right without regard to the solvency or insolvency of the party of the first part or of the then owner of said property and without regard to the value thereof, and such Receiver may be appointed by any court of competent jurisdiction upon ex parte application, and without notice—notice being hereby expressly waived—and all rents, issues and profits, income and revenue therefrom shall be applied by such Receiver to the payment of the indebtedness hereby secured according to law and the orders and directions of the court.'

"That during the year 1931, the said Joseph M. Erwin died and his estate was probated in the county court of Jefferson County, and pursuant to the orders of the said county court Eleanor Erwin was appointed Administratrix of his estate, and that Eleanor Erwin is the widow of Joseph M. Erwin, and is the sole legatee, devisee and heir; that said estate has at this date not been closed.

"That on November 19, 1937, Eleanor Strickland leased the Erwin Ranch described herein to John Hamilton for a term commencing December 1, 1937, and ending the first of December, 1938, at a yearly rental of $583.20, and on said date said Hamilton executed and delivered his promissory note in said sum to Eleanor Strickland, together with chattel mortgage on all crops raised on said ranch during said term, also on one black mule weighing about 600 pounds; that said note was payable November 15, 1938; that said chattel mortgage was not filed or recorded prior to September 19, 1938, the date

on which this suit was filed; that prior to said due date of the mortgage, and on or about September 17, 1938, said note was endorsed over to A. D. Quaintance, who is now holder thereof; that said Hamilton occupied said premises under said lease and produced a crop of sugar beets on said premises which were shipped to The Great Western Sugar Company, and for which he received in settlement the following checks: November 14, 1938, $317.60, November 30, 1938, $231.35, which checks were immediately endorsed by said Hamilton and said Strickland and turned over to A. D. Quaintance, the holder of said note, in payment of said note secured by said chattel mortgage; that in the meantime this suit was commenced and the Sugar Company was notified to place the name of Leander A. West on said checks, which was accordingly done, and said Leander A. West refuses to endorse said checks.

\* \* \*

"It is further stipulated and agreed by and between the parties that this Court may decide whether or not under the circumstances as here presented the checks from the Sugar Company should be applied to the payment of the note and chattel mortgage given on November 19, 1937, in payment for the 1938 rental, or whether the money should be applied to the payment of the real estate mortgage and note held by the plaintiff, and the taxes and interest charges due thereunder.

"It is further agreed that a hearing shall be had hereon on February 6, 1939, at which time the parties hereto will have the right to present such evidence as they may desire and that all parties agree to abide by the decision of the Court, and to endorse the said check for distribution according to the order of the court, subject, however, to the right of either party to appeal from said order."

It appears from the record, that defendant was in possession of the property, at least until February 6, 1939, and that no receiver ever was appointed. On that date

the funds here in controversy were placed in the registry of the trial court, to await the action of the court. It may be inferred from the record that no sale of the real estate under foreclosure was had prior to February 6, 1939. We have before us, then, the question whether the mortgagee or mortgagor is entitled to the rental of the land involved in the foreclosure proceeding for the year ending December 1, 1938. If the mortgagor was entitled to this rental, under the facts and circumstances here in dispute, then the trial court committed error in entering judgment in favor of plaintiff on that issue.

■ ■ In the solution of this problem our attention has been directed to a number of our decisions relating to such an issue. We have uniformly held that section 281, chapter 22, Code of Civil Procedure, deprives the mortgage of its common-law character and the mortgagee of all possession and right of possession before or after condition broken until after foreclosure and sale. *Fidelity Bond & Mortgage Co. v. Paul*, 90 Colo. 94, 98, 6 P. (2d) 462; *Pueblo & A. V. R. Co. v. Beshoar*, 8 Colo. 32, 35, 5 Pac. 639.

In *Moncrieff v. Hare*, 38 Colo. 221, 87 Pac. 1032, we had before us the issue of rents and profits in an action to compel the administrator of an estate to pay the same to the mortgagee. To secure the payment of the debt, the rents and profits from the encumbered premises were given as additional security. It also was conceded that the mortgaged premises were insufficient security for payment of the debt; that they constituted the only assets available to apply on the debt; and that the mortgagors were insolvent. In that case we said (p. 238): "The authorities which we have followed agree that so long as the mortgagee does not take some effectual step to regain possession, and while the mortgagor is in actual possession, the latter and not the former is entitled to the rents and profits. Applying that doctrine to the present case, it would seem to follow that the mortgagee's right to the rents and profits should be limited to

those accruing after the filing of the suit to foreclose the mortgage, which was the first attempt by the mortgagee to gain possession and prove his rights."

That case is distinguished from the one before us here, in that the trust deed herein did not expressly pledge the rents and profits as a part of the security. The trust deed here involved states that, "And that in case of any default, whereby the right of foreclosure occurs hereunder, * * * the holder of said note or certificate of purchase shall at once become entitled to the possession, * * * and to the rents, issues and profits thereof, * * *." Moreover, nothing in the record in this case discloses insufficient security or insolvency. It is true that counsel for defendant sought to introduce testimony showing adequacy of the security to pay the debt, but this was ruled out by the trial court on the ground of immateriality.

Our attention is next directed to the case of *Plains Loan, Realty & Investment Co. v. Hood,* 76 Colo. 322, 230 Pac. 1008. In that case Hood gave a note to the Plains company, secured by trust deed. The trust deed was in language similar to the one in the instant case. Hood defaulted and the Plains company caused the public trustee to foreclose and sell the mortgaged property. After the foreclosure proceeding was commenced, and before sale, the Plains company filed a suit in equity and obtained the appointment of a receiver, who was authorized to, and did, take possession of the land, with the view of applying the rents and profits to the payment of the mortgage debt. Thereafter, and before sale, the receiver was discharged. Two days following discharge of the receiver the Plains company, during the period of redemption, entered upon the premises, excluded the plaintiff therefrom and continued in possession and management of the premises, and conducted the farming operations during the farming season. Mr. Justice Campbell, who was the author of the opinion in *Moncrieff v. Hare, supra,* delivered the opinion of the

court, and, having reached the conclusion that the mortgagee was not entitled to the rents and profits, said (p. 325): "In the Moncrieff Case, supra, this court held, among other things, that where the mortgagee has made a foreclosure and sale under a mortgage, which pledges rents and profits as part of its security, a court of equity may appoint a receiver, at any time after the filing of foreclosure suit, to collect the rents and profits and have the same applied on the mortgage debt, if the security is inadequate and the mortgagor is insolvent. Other questions were determined in that case that are not here involved. With its doctrine we are satisfied, but, under the peculiar facts now before us, it does not apply to or support the contention of the defendant. There was no showing in this case that the mortgaged property was inadequate to pay the mortgage debt, or that the mortgagor was insolvent. * * * It is no sufficient answer, under the facts in this record, to say that the mortgagee's right to the use and possession at once, upon the default of the mortgagor to observe the prescribed covenants, arose, and, therefore, the mortgagee was entitled to the rents and profits during the period of equity of redemption. The Moncrieff Case states the conditions on which the mortgagee's right to possession are founded. If the mortgagor was insolvent and the security was inadequate, the mortgagee had its remedy of applying to a court of equity for a receiver and possession and the impounding of the rents and profits. The mortgagee here did avail itself of that right, upon default of the mortgagor, and obtained the desired order; but thereafter the order of appointment was set aside and the receiver discharged and the mortgagor was reinvested with possession."

In *Tolland Company v. First State Bank*, 95 Colo. 321, 35 P. (2d) 867, we had before us a controversy over funds derived from the sale of a beet crop, which funds were deposited in the registry of the court. The rival claimants consisted of the mortgagee of the realty and

the mortgagee of the crops. The trust deed to the realty was similar to the one in the instant case. The mortgage on the crops was executed prior to the appointment of a receiver and while the mortgagor was in possession. About a month later the mortgagee, under the trust deed, instituted foreclosure proceedings and caused a receiver to be appointed. Thereafter the receiver sold the beet crop and deposited the proceeds therefrom in the registry of the court. In that case we said (page 326): "Reasonably construed, we think the provision of the trust deed to the effect that on default the debt holder shall be 'entitled' to the rents, etc., pertains to what the creditor may accomplish through a proper proceeding, not to something enjoyable without or pending initiation of action. Therefore, since at the time it took the chattel mortgage on the crop no prior lien obtained, the bank's knowledge of the defaulted state of the real estate secured paper is not important. It was bound to notice liens, not debts."

The rights of mortgagor and mortgagee, in case of foreclosure, and during the period of redemption, are specifically set forth in article 4, chapter 40, '35 C. S. A., and particularly in sections 165 and 166. *Friedrichs v. Midland Savings & Loan Co.,* 94 Colo. 563, 567, 31 P. (2d) 493.

The latest decision by this court involving a similar issue is in *Fisher v. Norman Apartments,* 101 Colo. 173, 72 P. (2d) 1092. The controversy there was between a judgment creditor of the mortgagor and a bondholders' committee, which, jointly with the mortgagor, under an express agreement, were operating the apartments involved in the mortgage. The assignee of the judgment creditor, Fisher, garnisheed the funds of the mortgagor. The judgment was rendered September 4, 1931. The agreement between the mortgagor, mortgagee and the bondholders' protective committee was entered into October 12, 1932. Foreclosure suit was commenced November 8, 1932. Decree of foreclosure was entered July 15,

1935. Judgment was assigned to Fisher July 31, 1935. Garnishee summons was issued September 18, 1935. Order confirming foreclosure sale was entered November 26, 1935. In holding that the assignee of the judgment creditor was entitled to the funds, we said (pp. 182, 183):

"It is said that the rents were assigned in the deed of trust. This, however, does not operate to give the mortgagee a right to such rents except under certain definite conditions. If the mortgagor abandons the possession, which was not done in this case, the mortgagee may take possession and collect the rents. Where rents are assigned to the mortgagee a receiver may be appointed to take possession for him and collect the rents for his benefit; but this was not done. Neither under general principles of equity, well recognized in foreclosure proceedings, nor under our statute (if the same applies to prior mortgages which we need not determine) is the mortgagee entitled to the rent here involved. 'When an action or proceeding has been commenced to foreclose a mortgage, trust deed or other instrument securing an indebtedness, a receiver of the property affected, shall be appointed upon application at any time prior to the sale, if it appears that the security is clearly inadequate, or that the premises are in danger of being materially injured or reduced in value as security, by removal, destruction, deterioration, accumulation of prior liens or otherwise, so as to render the security inadequate.

" 'If the facts would justify the appointment of a receiver under this section, but one is not applied for, and if the premises be abandoned by the owner thereof, the holder of the lien may take possession until the sale, and shall be subject to the same duties and liabilities for the care of the premises and for the application of the rents and profits as would a receiver.' Sec. 8, chapter 151, S. L. 1929 (Sec. 165, c. 40, C. S. A. '35)."

See also Jones on Mortgages (8th ed.) section 976;

Wiltsie on Mortgage Foreslosure (4th ed.) section 556.

For the purpose of further clarification, we have before us a trust deed which does not expressly pledge the rents and profits of the mortgaged premises in payment of the debt; the mortgagor is in possession of the premises; no receiver has been appointed; no foreclosure decree has been entered. Under these circumstances, the mortgagor clearly is entitled to the rental for the period of time here involved, to which the fund in controversy is related. This view is in harmony with 41 C. J., page 627, section 604, notes 26 and 27, and the great weight of authority there cited.

Early in the proceeding before us plaintiff filed a petition to dismiss the application for supersedeas and writ of error on the ground that the order involved was not a final judgment and that, therefore, we had no jurisdiction to entertain the review. That petition was denied without prejudice. The judgment here involved reads in part as follows:

"That said checks should be applied to the payment of the real estate mortgage and note held by the plaintiff, and judgment is ordered in favor of plaintiff.

"Defendant, by her attorney duly excepts to the ruling of the Court herein, and asks and is given 30 days stay of execution and 30 days to tender bill of exceptions."

The court made it clear that so far as this issue was concerned, its judgment was final. Subsequent orders entered by the trial court indicate that this was its view and intention.

After giving this matter further consideration, we believe that the order denying the petition to dismiss was correct. *Standley v. Hendrie & Bolthoff Mfg. Co.*, 25 Colo. 376, 55 Pac. 723. The order and judgment were conclusive as they applied to the application of the fund to the payment of the note and mortgage.

There may be some undetermined questions in the foreclosure proceedings or in the stipulation, indepen-

dent of the application of the fund here involved to the payment of the note and mortgage, which would permit the mortgagee to share in the fund. Under these circumstances the judgment is reversed and the case remanded for further proceedings in harmony with the views herein expressed, without prejudice to the determination of any questions relating to the application of the fund as above indicated.

MR. JUSTICE FRANCIS E. BOUCK dissents.

MR. JUSTICE BURKE dissenting.

I think the action of the trial court was not a final judgment and the motion to dismiss the writ for that reason, heretofore filed in this court, should have been, and should now be, sustained. Hence I think the rehearing should be granted, and I now dissent from the court's opinion.

MR. JUSTICE BAKKE concurs in this dissent.