No. 19,109.

WALTER E. HELLER & COMPANY, INC. *v.*
J. WALTER LINDSEY, ET AL.
(361 P. [2d] 979)

Decided May 15, 1961.

Messrs. CRANSTON & ARTHUR, for plaintiff in error.

Mr. WILLIAM OSTHOFF, JR., for defendants in error.

*In Department.*

Opinion by MR. JUSTICE DAY.

WE will refer to the plaintiff in error, who appears here as in the trial court, as Heller or plaintiff; to defendants in error as Lindsey or defendant.

The cause was tried under an agreed statement of facts disclosing the following: Cal-Ore-Ida Lumber Company of Boise, Idaho, had been selling lumber to Lindsey, a lumber broker in Denver, for a considerable period of time. During the period involved in this action, between July 31 and October 11, 1957, the value of lumber sold to Lindsey by Cal-Ore-Ida totaled $84,180.40. All of the invoices covering these sales are contained in one of the stipulated exhibits.

On July 31 Cal-Ore-Ida entered into a factoring agreement with plaintiff Heller whereby the Cal-Ore-Ida invoices to Lindsey (and other customers as well) were factored or purchased by Heller at a discount of 1.2%. The details of the factoring agreement were never disclosed to Lindsey, but he was informed by letter that the agreement existed. He acknowledged receipt of the information and — except for the four invoices giving rise to this law suit — complied with the instructions as to payment of the invoices. The procedure, identical in each transaction, was: Lindsey would order lumber from Cal-Ore-Ida for delivery directly to Lindsey's customers. The invoices from Cal-Ore-Ida to Lindsey identified the customer to whom the order was to be shipped, and, although the shipment went directly to the customer, the invoice went to Lindsey. These invoices were dated prior to or on the actual date of shipment. The original invoice went to Lindsey with a copy to Heller. All of the invoices were in the same form and contained a notation of assignment to Heller. When Heller received his

copy of the invoice he would remit the amount less the discount in accordance with the financing agreement to Cal-Ore-Ida within thirty days from date of the invoice. Within the discount period Lindsey would remit the full amount of the invoice to Heller. In September 1957, on several occasions, Cal-Ore-Ida was not able to fill the Lindsey orders from its own mill, so it ordered the required lumber from other mills whom we will designate as Suppliers. The Suppliers invoiced Cal-Ore-Ida, which, in turn, invoiced Lindsey.

In each of the instances in which the Suppliers were called upon to fill the orders, they advised Lindsey that they would not fill the order unless Lindsey would guarantee payment thereof to the Supplier. Lindsey made the necessary guarantee agreement in each instance, and his orders were accordingly filled for his customers. The invoices covering these transactions totaled $6,204.03.

On October 22 Lindsey became aware that Cal-Ore-Ida had failed to pay the Suppliers for the September orders and shipments. He informed Heller by phone, confirmed by letter, that the guarantee agreement to the Supplier was necessary to enable him to get delivery of the lumber, and informed Heller that Cal-Ore-Ida had not paid the Suppliers, who had, in turn, called on him to make good the guarantee. Lindsey then retained from funds due on four October invoices the sum of $6,146.28 in order to make good this promise to the Suppliers. It developed that Cal-Ore-Ida had been insolvent since September 1, 1954, and was adjudicated a bankrupt on November 5, 1957. Other agreed facts to complete the picture are that the trustee in bankruptcy for Cal-Ore-Ida was not a resident of Colorado and not subject to service of process. It was further stipulated that Heller had withheld from remittances to Cal-Ore-Ida a sum amounting to $10,133.41. Heller claimed, and it was not disputed, that at the time of the bankruptcy he held unpaid invoices in the sum of $22,008.43 which included the four invoices upon which this suit was brought.

After making findings of fact which correspond with the agreed statement, the court entered the following conclusions of law:

"1. That the form of notice given to Defendant herein by Plaintiff did not estop from asserting guarantee agreement on October 22, 1957.

"2. That Defendant is entitled to an equitable setoff in the amount of $6,204.03 as against Plaintiff's claim herein.

"3. That Colorado law does not require maturity of setoff prior to assertion thereof.

"4. That non-residence alone of the assignor is sufficient ground for an equitable setoff."

Judgment was entered for plaintiff and against defendant in the amount of $43.81, being the difference between the amount claimed by Heller and the set-off allowed to Lindsey by reason of his position as guarantor to the various Suppliers.

The sole question is whether the facts presented properly invoke the doctrine of equitable set-off so as to relieve Lindsey from double payment for the lumber obtained from the Suppliers. We are persuaded that it does, and that in applying it the trial court did not err.

■ The doctrine is applied in the case of *Nolan Bros. Lumber Co. v. Dudley Lumber Co.*, 128 Tenn. 11, where it is said:

"There can be no doubt that a surety or indorser, who pays his principal's demand, has *status*, as such, to enforce an equitable set-off against a demand sued by such principal himself, if that principal be insolvent. There is nothing in any contingent feature incident to the claim of a surety or indorser that defeats the right."

Applying the rule announced in the cited case to the factual situation here, it is clear that each of the invoices to Heller was separate and distinct assignment, some of which Lindsey paid. The invoices upon which this suit was brought were dated October 9, 10 and 11, 1957, and several weeks before payment thereof became due, Lind-

sey's liability as guarantor to the Suppliers became absolute and he was called upon to make payment. Cal-Ore-Ida became insolvent on September 1, 1957, and was such on October 9 and 10, when these invoices were assigned to Heller.

■ An additional ground is present here which of itself allows application of the doctrine of equitable set-off. The non-residence of Cal-Ore-Ida and of its trustee in bankruptcy, both of whom are beyond the jurisdiction of the Colorado courts. In *Plattner v. Bradley,* 40 Colo. 95, 90 Pac. 86, it is said that equity will afford relief in the way of set-off when the party against whom the set-off exists is a non-resident on whom the service of process in an independent action cannot be had within the jurisdiction.

■ Another element in the factual situation here shifts the equities to the side of Lindsey. Heller had protected himself by building up sizable reserve cash funds in excess of $10,000.00 and thus is in a better position to protect himself from loss than is Lindsey. Moreover, as assignee of Cal-Ore-Ida, Heller stands in its shoes and is in no better position to enforce its claims than would be Cal-Ore-Ida itself.

The judgment is affirmed.

MR. JUSTICE MOORE and MR. JUSTICE FRANTZ concur.